The next matter is number 23-1023, Gerardo E. Martinez v. Wayne T. Salisbury, Jr. At this time, would counsel for the appellant please introduce herself on the record to begin. Good morning. May it please the Court. Assistant Public Defender Camille McKenna on behalf of Mr. Martinez. May I request two minutes for rebuttal, please? Yes, you may. The State Court unreasonably applied Strickland because it deferred to trial counsel's decision to pursue a no premeditation defense and echoed trial counsel's flawed reasoning without conducting its own analysis. The no premeditation defense was factually and legally invalid. All of the undisputed evidence that was aired well before trial established more than a mere moment of intent. Under Rhode Island law, what happened in the bathroom is more than a mere moment. Trial counsel had a viable diminished capacity defense which supported a lesser charge of voluntary manslaughter and carried a parolable sentence, but he failed to present it. Let me ask you two questions about those. Yes. On the diminished capacity, had he pled that, that would have opened up some avenue of evidence for the government that it might not otherwise have had, including a prior rape conviction? Including a prior? Prior rape charge. There was no prior rape charge. There was allegations made by Mr. Martinez's ex-wife, but nothing ever led to an arrest. I thought she charged him with, I don't mean an indictment, but I mean wouldn't it have come into evidence with the psychiatrist that his prior wife had accused him of that? So, first, the alternative was no defense, so it's no defense versus... Let's stay with the alternative defense that you say he should have pursued. So, there's nothing in the record that indicates that evidence would have been admitted. There was no pre-trial hearing on the allegations made by Mr. Martinez's ex-wife and ex-girlfriend. Everything centered around the victim in this case. The counsel, it wouldn't have needed to have been admitted, right? It could have just been used for impeachment during the cross-examination. Correct, but there was no hearing on that. So, in order for that to come in through the expert, it still has to pass muster under 404B. It still has to pass muster under Rule 403. So, there was no guarantee that was coming in. It was never litigated because he never presented this expert. Right, but the issue for us is could any reasonable counsel have been concerned that if he went that route, he or she went that route, that this evidence would come in and be harmful? We don't even have to decide whether it would, in fact, have come in. But I still go back to what was the alternative, and the alternative was no defense. Well, let me ask you about that, my question about the alternative. You said it was factually and legally untenable. What do you mean by legally untenable? Wasn't he entitled to argue that defense to the jury and did argue it? And the jury could have come back and said innocent if they bought it. I am saying that based on Rhode Island law and the facts, specifically the facts of what happened in that bathroom, the only verdict the jury could return based on the instructions they were given was and is first-degree murder. So, are you saying if the jury had come back with an innocent verdict, he still would have been convicted? I'm saying we have to presume they will follow the court's instructions and based on the evidence that they heard at trial, the only verdict that they could have returned was on first-degree murder. But you're a public defender. Lots of times criminal defense counsel are hoping a jury doesn't follow the judge's directions, and if they don't, you're off. But I think looking at this from under the Strickland analysis, we have to presume the jury follows instructions. I mean, we do that often on appellate review. We can't speculate, oh, there might be a jury nullification issue. We have to look at this reasonably. So you're saying we should assume that no reasonable counsel, defense counsel, would ever place any weight at all on the possibility of jury nullification? I don't think that that can be a reasonable strategy. Counsel, can I ask you a slightly different question? And, you know, I understand the arguments you're making, and this was a difficult case to defend given all the evidence. I'm sure you'll agree. And when you say that this was no defense at all, one of the reasons I'm struggling with that is it's twofold. First, we have the judge who actually tried this case and heard all the evidence in real time decided to give the second-degree murder instruction and said it was warranted later at the motion for a new trial hearing. He thought the evidence warranted the instruction. And then he also said, the trial judge said, that the attorney here, who you're saying failed the Strickland standard, did a very good job. That was the observation of the judge who sat during the trial, and then the post-conviction hearing judge also concluded that he actually wouldn't have quibbled with the strategy that Mr. Smith pursued here. So when we have two state court judges, one who watched the trial and one who watched Mr. Smith testify, telling us that they thought he chose the correct strategy and did a good job, how can we say the standard has been met? That's what I'm struggling with. So with respect to the trial judge, the trial judge was not privy to a diminished capacity defense because that evidence was never put on. So when he is making those comments at the motion for a new trial or the sentencing, he has not been privy to that defense. There has been a verdict by a jury that also wasn't privy to that defense. But I guess I was asking you something slightly different, because you were saying it was not a legally viable or factually viable strategy. And I guess what I'm saying is the judge who gives the instruction on the law and heard the facts thought it was a legally viable strategy because he instructed the jury on second-degree murder. So the issue of the instruction was never litigated. He just gave it. The state never objected. I understand that, but he can't give an instruction that he doesn't think is warranted and he says later that he thought it was warranted. Then I think my answer to that is that based on this record, that instruction was not warranted, that that was an error. And my point is that when you look at the evidence of what happened in the bathroom, that is more than a mere moment. And under our very strict and severe Rhode Island murder law, that is enough for first-degree murder. The only time you can have a conviction for second-degree is if there's fleeting intent at the time of the murder. What happened in that bathroom was more than fleeting. Do you want to address the prejudice prong? I'm sorry? Do you want to address the prejudice prong? Yes, so at the end of the day, the state has never offered evidence to attack the medical findings of not only Dr. Stewart but Dr. Parsons who testified at the post-conviction hearing. Certainly if either of those doctors had testified, Mr. Martinez would have been entitled to a diminished capacity instruction. And under the second prong of Strickland, there's definitely a reasonable probability that jury would have returned a verdict of manslaughter versus first-degree murder. Counsel, you're right that the government didn't, the prosecution didn't introduce any evidence to directly rebut, but they did do a very, I think, careful cross-examination of the expert at the post-conviction hearing. And the other thing in the record that I think really is a challenge on the prejudice prong is that the treating physician, your client's treating physician, testified at that hearing. And she testified that your client was functioning pretty well the day before the murder took place. So why isn't that enough, even if the government didn't introduce its own expert? Can I answer that? Again, I think my client does not have to establish that the diminished capacity defense would have been successful, just that there's a reasonable probability. And Ms. Sheehan, who was his social worker, his therapist at the time, I think she was treating him with cognitive behavioral therapy that triggers panic attacks. He had a session, I believe, the day before this incident. So again, I don't think that the state established a cross enough to overcome the evidence that was established through Dr. Parsons and even through Ms. Sheehan that there was a reasonable probability that he was suffering from a mental illness at the time of this crime. Reducing it to manslaughter, he couldn't form the intent to kill. Thank you. Counsel, I've forgotten how Rhode Island law works. With a first degree conviction, mitigation play any role at sentencing? So in a life without parole case, which this was, yes, so that the court is required to weigh at sentencing mitigating and aggravating factors presented by defense counsel and the state. Is there any argument that a reasonably competent counsel should not or cannot consider the choice whether to reserve and preserve something for mitigation as opposed to at the trial? Because you seem to have bifurcated it and said he had to go all in at trial. So I think the issue at trial that the expert would be used for is whether Mr. Martinez could form the intent to kill. The issue at sentencing is separate. It's mitigating. It's all the trauma he endured. So I think certainly could be used for both. I'm saying that based on the facts here, it was unreasonable to say, oh, I'm just going to use it. But you're not saying that as a matter of logic it couldn't be, you couldn't choose to hold it for sentencing? What I'm saying is here he was worried. Yeah, on the facts of this case. He was worried that if the judge heard it, if the jury heard it during the trial, that it couldn't be used at sentencing, and I disagree with that. Absolutely. Okay. Thank you. Thank you, counsel, at this time. If counsel for the appellee will please introduce himself on the record to begin. Good morning. May it please the Court. Christopher Bush for the respondent in this case. As this Court well knows, the standard of review with respect to an ineffective assistance of counsel claim in the context of a habeas petition is doubly deferential. There's the deference that's due to counsel under Strickland in reviewing the substantive and effective assistance claim. As I think Judge Keada pointed out here, the standard would be that, you know, deference is due to the strong presumption in favor of the counsel's strategic decision and it's only overcome if it's so patently unreasonable that no competent attorney would have made the same conclusion that the attorney did in this case. And then secondly, through the lens of AEDPA, the burden is on the petitioner to show that no reasonable jurist would have reached the same conclusion that the state court did in this particular case. The language, I think, or the state would submit is strongest here is the language in Strickland about strategic choices that are made after thorough investigation of the law and facts relevant to the plausible options. And the court said in those instances those decisions are virtually unchallengeable. Counsel, can I ask you a question about that? Because there's one thing where it seems to me that the trial counsel here did get the law wrong, and so I'm wondering how it can be strategic. So he testified at the post-conviction hearing that his primary reason for not introducing the evidence testimony during the merits phase was because he thought it would lessen the impact of it at the mitigation phase. Correct. And that the judge really wouldn't pay attention to it essentially. But isn't the judge obligated to consider that expert testimony at the mitigation phase? So wasn't that just a legal error rather than a strategic call? I don't think it was a legal error. That was one of the multiple factors, six or so, that motivated defense counsel not to assert the diminished capacity defense. It's not he wasn't legally incorrect in so far as he didn't say the judge wouldn't consider the issues that the expert would testify to when considering whether to impose life without parole. But his determination was the weight that the judge would give it would be significantly lessened if he had presented that evidence and that testimony at trial. The jury had essentially rejected it by coming back with a first-degree murder case and essentially rejecting the diminished capacity case. And then it would put the trial judge or the sentencing judge in the position of having to weigh that testimony knowing that the jury had already rejected it. I understand what you're saying, but the trial judge would be weighing it for a very different purpose at that point, not whether or not he could form a specific intent to kill, but whether his circumstances are enough to justify giving him the possibility of parole, right? So it still seems to me that it's not the same question, and trial counsel seemed to conflate the two. But the trial justice does not have to accept the recommendation by the expert. And he can decide, in this case, he can decide how much weight to give it, or whether it's a viable opinion on the part of the psychiatrist, whether it's rebutted on cross-examination or impeached on cross-examination, which is what happened in this case with Dr. Stewart when he testified at the life without parole hearing. So I don't think that Mr. Smith was saying it would, you know, he wasn't wrong, because he didn't think that the judge would have to ignore the issue, but it was just a matter of how much weight that the judge might give it in the sentencing context. So in this case, there really can be no dispute as to the work that defense counsel did in preparing for trial and making his strategic decision about which defense strategy to pursue. It's undisputed that he reviewed all of the discovery, all of the photographs, all of the videos that were turned over in discovery. He spoke with Mr. Martinez and his family about his background. He identified the possibility of a diminished capacity defense, so he ordered all of Mr. Martinez's medical records and retained an expert psychiatrist to have him review the records and meet with Mr. Martinez and discuss a possible diminished capacity defense. And he also conferred with one of the more senior members of the Rhode Island criminal defense bar about the options and whether this was a defense that he should pursue and the likelihood that he would succeed on it. And ultimately, counsel just determined or decided that the diminished capacity defense was not the best. He didn't think, based on his 34 years of experience and 1,000 criminal cases that he handled, that it was likely to succeed at trial. Judge Kayada mentioned earlier that one of the reasons why, or that counseled in his mind, against pursuing the defense was the evidence of domestic violence that would likely come out on cross-examination of the expert. You have your opinion, but did you know about this incident? And it involved both Mr. Martinez's ex-wife, Mr. Martinez's ex-girlfriend, and we've described in our brief some of the testimony or evidence that might have come out on that. A letter that the victim in this case had written to Mr. Martinez that was excluded pre-trial from being introduced in the case in chief. The graphic crime scene photographs of what happened here. The post-murder actions of Mr. Martinez. After he killed Lindsey Burke, he put her in a bathtub, got in his car, went and withdrew money from an ATM, did some Internet searches, recorded a video confession at his house before driving up to New Hampshire, attempting suicide and writing a suicide note. So in Mr. Smith's mind, anyway, when you look at all of those factors, it would have to convince the jury that he could turn on and turn off the diminished capacity because he was so calm, cool and collected in the video and the other actions indicated. Counsel, I'm sorry to interrupt, but Mr. Smith also recognized that the defense he did pursue had major problems with it. I mean, he himself testified that he was trying to have the jury essentially ignore what happened in order to believe that defense. So he had two defenses which he thought both had major problems with them. So how is it strategic not to choose the defense that would have allowed for a potential voluntary manslaughter charge rather than a murder charge when he himself saw problems with both of them? It's not that he thought the other defense was not problematic, right? How is that a strategic defense? There was an issue about the no premeditation defense that concerned him. And that was there was an episode or a fight that took place in the living room of this home and then during which Mr. Martinez physically assaulted and I think broke Lindsay Burke's nose and then she retreats to the bathroom as taking care of the bloody nose. He finds the picture of this gentleman that she was starting to develop a relationship with and then goes into the bathroom and confronts her and then that's where the murder takes place. His concern that he had was making sure that when he went through the evidence that the premeditation didn't start during the fight in the living room. So he was trying to make it to arguing two separate incidents. If there was a fight in the living room. I understand that. I know that's what he was doing, but I think he himself testified. I think he used something like the words I tried my best to ignore the fact of what had happened in the living room as a reasonable strategic call. Well, it's a second degree murder charge, so it would be no premeditation would be second degree in Rhode Island which is not there's no you're not subject to the possibility of life without parole in a first degree murder case. And I think that's what he said all along. This was second degree murder all the way because he didn't want to. He wanted to give Mr. Martinez the possibility of being paroled either on a term of years or a life sentence for the second degree murder. I think that he recognized the issue with the fight in the living room and focused the jury on the bathroom. It's the bathroom. You never have to get out of the bathroom and then argued that that's when the premeditation started. He recognized and it was an issue that he recognized in his argument and why he was arguing for second degree. The litany of issues that counseled against diminished capacity were in his mind much stronger and counseled against that defense. And we've identified those in a brief. I know I'm running out of time. And he made the strategic decision that this was the best approach. That diminished capacity wouldn't work and that would subject him to the possibility of a first degree murder conviction and the possibility of a life without parole sentence. I could briefly just turn to prejudice. That is not a prong that either the state court or the district court in this case addressed. And I think that Mr. Martinez's argument on appeal is just look at the opinions of the two experts rendered in this case. I dispute the fact that the state didn't challenge any of those opinions. The state did not call an expert witness either in state court or in federal court. But the state certainly methodically cross examined in this case Dr. Parsons about his opinion. And certainly showed or established that a number of things that really called it into question. He talks about relying on the medical records in this case of Mr. Martinez, but at some point admitted that he couldn't read the medical records. He talks about this being an issue of flashbacks and dissociative episodes. But Mr. Martinez never talked about flashbacks at the time of the murder. At some point Dr. Parsons also acknowledged that some of the acts in this case, the slashing of Lindsay's throat, the fight in the living room, he wasn't having a dissociative episode or a flashback. When he tried to explain why he was in some cases and others, all he could say was it's complicated. So the state would submit that efficient performance prong aside, which the state would ask this court to affirm on that Mr. Martinez has not in any event established the prejudice prong under Strickland. Thank you. Thank you counsel. On behalf of Mr. Martinez, if I could just address the unreasonable application. It doesn't trial counsel knew there was a problem in this case and it doesn't matter how he characterized his defense, how he tried to spin it. That doesn't negate the facts, the facts of what happened in the bathroom. Taking the living room out of the equation, just the bathroom was more than a mere moment. And that is supported by Rhode Island law, whether he calls it crime of passion, heat of passion, he snapped. That doesn't negate what happened in this case and what he knew pretrial. I think you're making the point, which is one of your stronger ones, which is it was a Hail Mary type defense. It was a very weak defense and you would say it was fatally flawed. Yes. But what do you do to the problem was not like the diminished capacity defense was much better, particularly in light of the concessions of the experts made about flashbacks, about his testimony that he wasn't having a flashback and the jury is going to hear all the same evidence and plus more. You might be having a situation here where counsel is weighing one zero against another zero or one near zero against another. The defense he pursued was a zero, the diminished capacity was more than that. At the end of the day, the state never contested the medical findings. Yes, they cross examined Dr. Parsons, but they never contested those medical findings. Well, they didn't need to if there was no diminished capacity defense being raised. At the post-conviction hearing, they could have had Mr. Martinez independently evaluated and put on that person. So they never countered that and again, at a post-conviction level, I don't have to establish that this defense would have succeeded, just a reasonable probability which is less than more likely than not. So it's a very low standard. Well, you have to establish that it was of sufficient perceived strength to some reasonable, to no reasonable counsel, to all reasonable counsel, that they would not have foregone it. And I believe any reasonable counsel in this case would have chosen diminished capacity over a no premeditation type of defense. Thank you.